# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 18-40229

United States Court of Appeals
Fifth Circuit

**FILED**
April 8, 2019

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

> Plaintiff - Appellee

v.

JAIME GERARDO GONZALEZ,

> Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 5:16-CR-1334-1

Before WIENER, DENNIS, and OWEN, Circuit Judges.

PER CURIAM:*

Jaime Gerardo Gonzalez was indicted for receiving, distributing, and possessing child pornography after a search of his home revealed hundreds of videos depicting child pornography and he admitted to agents that he viewed the videos. Gonzalez moved to suppress the evidence and his contemporaneous statement due to errors on the face of the search warrant affidavit—specifically, that the affidavit listed the incorrect IP address in one of the

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-40229

paragraphs and contained conflicting dates as to when the videos were downloaded from Gonzalez's IP address. The district court denied Gonzalez's motion, applying the good-faith exception to the exclusionary rule. We AFFIRM.

## I.

Gonzalez was indicted for receiving, distributing, and possessing child pornography in violation of 18 U.S.C. § 2252A(a) after a search of his home revealed hundreds of videos depicting child pornography, and he admitted to the agents conducting the search that he downloaded and viewed the videos. Agents conducted the search pursuant to a warrant obtained by Homeland Security Investigation (HSI) Special Agent Brian Wimberly, who signed and submitted a 25-page affidavit to the magistrate judge setting forth, inter alia, the basis for probable cause.

Paragraph 8 of the affidavit stated: HSI Brownsville conducted an undercover operation into IP address 70.113.183.0; in August 2016, HSI Brownsville successfully completed a download of one video and partially completed a download of two other videos from IP address 70.113.183.0; and the "contents of [the videos] were consistent with child pornography." Paragraph 8 also contained the file names of the three videos, which described sexually explicit behavior with children. Paragraph 9 alleged that IP address 70.113.183.0, the one listed in the prior paragraph, belonged to Gonzalez. Paragraph 10 stated that "[b]etween June 23, 2016 and July 9, 2016, the three (3) videos downloaded by HSI Brownsville that the computer at IP address 70.124.108.213 was making available to share" were the three videos mentioned in Paragraph 8. In addition to the video file names, Paragraph 10 provided detailed descriptions of the contents of the videos listed in Paragraph 8 and their "unique" SHA-1 values, which can be used to identify known child pornography.

No. 18-40229

There are two errors in the affidavit. First, the IP address listed in Paragraph 10, 70.124.108.213, is incorrect. It should read 70.113.183.0, which is Gonzalez's IP address and is listed correctly seven times in the affidavit. Second, the date listed in paragraph 8 is incorrect. It says that HSI Brownsville downloaded the videos in August 2016, when they were actually downloaded in June and July of that year. Paragraph 10 states the correct months of the downloads.

Gonzalez argued that the evidence and his admissions to the agents should be suppressed because the search warrant was issued without probable cause due to discrepancies between the dates and IP addresses in paragraphs 8 and 10. At a hearing on the motion, Agent Wimberly testified that the IP address error in Paragraph 10 was a typo, and the date in Paragraph 8 was a mistake—while he initially believed the downloads were completed in August, he later learned they were completed in June and July. The district court denied Gonzalez's motion, applying the good-faith exception to the exclusionary rule. The court found that the purpose of the exclusionary rule would not be served by suppression because the rule is "designed to deter police misconduct rather than to punish the errors of judges and magistrates." *United States v. Breckenridge*, 782 F.2d 1317, 1321 (5th Cir. 1986) (quoting *United States v. Leon*, 468 U.S. 897, 916 (1984)). Gonzalez pleaded guilty, reserving his right to appeal the denial of his motion to suppress.

## II.

We review a district court's denial of a motion to suppress through a two-part inquiry, asking (1) whether the good-faith exception to the exclusionary rule applies, and (2) whether the warrant was supported by probable cause. *United States v. Laury*, 985 F.2d 1293, 1311 (5th Cir. 1993). If the good-faith exception applies, we need not address the probable cause issue unless it involves a "novel question of law whose resolution is necessary to guide future

3

action by law enforcement officers and magistrates." *Id.* (cleaned up). Because this case does not involve a novel question of law, we will first address the applicability of the good-faith exception.

In *Laury*, we noted that the Supreme Court in *Leon* had established the "good-faith exception" to the exclusionary rule, which holds that "evidence obtained by officers in objectively reasonable good-faith reliance upon a search warrant is admissible, even though the warrant was unsupported by probable cause." *Id.* (citing *Leon*, 468 U.S. at 922-23). We have recognized four situations when the good-faith exception does not apply and suppression of the evidence is warranted. *United States v. Mays*, 466 F.3d 335, 343 (5th Cir. 2006). Gonzalez argues that two situations are present here: (1) "the issuing-judge wholly abandoned his judicial role in such a manner that no reasonably well trained officer should rely on the warrant"; and (2) "the underlying affidavit is bare bones (so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable)." *Id.* (cleaned up). We review de novo whether an officer's reliance on a warrant issued by a magistrate was reasonable. *Laury*, 985 F.2d at 1311.

## A.

Gonzalez argues that the magistrate judge wholly abandoned his judicial role in granting the warrant application because "obvious deficiencies in the warrant application [went] unnoticed and uncorrected." The wholly-abandoned-judicial-role exception may apply when the magistrate judge "serve[s] merely as a rubber stamp for the police." *Leon*, 468 U.S. at 914 (quoting *Aguilar v. Texas*, 378 U.S. 108, 111 (1964)); *see also Breckenridge*, 782 F.2d at 1321-22. We have previously explained, however, that this exception must "be read in the context of . . . *Leon*, which emphasized that 'the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates.'" *Breckenridge*, 782 F.2d at 1321 (quoting

*Leon*, 468 U.S. at 916). In keeping with this policy of police deterrence, we have applied the good-faith exception even when the magistrate judge "actually did not fully perform his role," so long as the judge "appeared to [the officers] to have fulfilled his duty to act as a 'neutral and detached' magistrate." *Id.* at 1321-22; *see also* 1 WAYNE R. LAFAVE, SEARCH & SEIZURE § 1.3(f) (5th ed.). We reasoned that to suppress evidence when the officers could not have reasonably known of the magistrate judge's error would "'punish [the police for] the errors of judges and magistrates,' in defiance of the command of *Leon*." *Breckenridge*, 782 F.2d at 1322 (quoting *Leon*, 468 U.S. at 916).

The magistrate judge's error here was failing to notice, question, or correct (1) the single incorrect IP address listed in Paragraph 10, and (2) the different dates of the downloads in Paragraphs 8 and 10. Even if the magistrate judge erred in failing to notice these inconsistencies, Gonzalez has not established that any alleged error was known or reasonably knowable by the officers applying for the warrant. *See Breckenridge*, 782 F.2d at 1321-22. The warrant application was with the magistrate judge for at least 12 hours before it was signed, and there is no evidence that he failed to read the affidavit. Accordingly, the district court did not err in finding that the magistrate judge did not wholly abandon his judicial role.

**B.**

Gonzalez next argues that the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923. Such deficient affidavits are often described as "bare bones" and containing "wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." *United States v. Satterwhite*, 980 F.2d 317, 321 (5th Cir. 1992).

No. 18-40229

Gonzalez argues that the affidavit failed to establish that the videos downloaded from his IP address actually contained child pornography. Paragraph 8 contains the file names of the videos downloaded from Gonzalez's IP address, and Paragraph 10 contains the same file names, along with detailed descriptions of the contents of the videos. The descriptions contained in Paragraph 10, however, are linked to the incorrect IP address. To support a finding of probable cause, Gonzalez argues, the affidavit must link the video descriptions to his IP address.

In analyzing the good-faith exception, however, the question is not whether the affidavit ultimately supported probable cause, but whether the officer applying for the warrant was "entirely unreasonable" in believing that the affidavit supported probable cause. *See Leon*, 468 U.S. at 923. We conclude that, given the nature of the errors, it was not "entirely unreasonable" for Agent Wimberly to believe the affidavit supported a finding of probable cause because he may reasonably have been unaware of the mistakes in the affidavit. *See id.* This case does not involve a substantive failure to establish probable cause in fact or a "bare bones" affidavit containing "wholly conclusory statements." *Satterwhite*, 980 F.2d at 321. It instead involves an affidavit containing two errors that went unnoticed by the officer who prepared the affidavit, the Assistant U.S. Attorney who reviewed and submitted the search warrant application, and the magistrate judge who issued the warrant—errors that, if corrected, would support a finding of probable cause. Of course, an affidavit containing errors will not always be saved by the good-faith exception, especially when those errors affect the probable cause determination. *See United States v. Ricciardelli*, 998 F.2d 8, 16 (1st Cir. 1993) (declining to apply the good-faith exception when the anticipatory warrant did not establish a sufficient nexus between the evidence to be seized and the place to be searched, and the "principal omission in the warrant . . . was both glaring and easily

correctable"). We conclude only that, on these facts, when Agent Wimberly gathered evidence sufficient to support a finding of probable cause, he was not "entirely unreasonable" in his belief that he accurately described that evidence in the affidavit and that the affidavit supported a finding of probable cause. *See Leon*, 468 U.S. at 923.

Therefore, the district court did not err in denying Gonzalez's motion to suppress by applying the good-faith exception to the exclusionary rule. For these reasons, the ruling of the district court is AFFIRMED.